UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

| | |
|---|---|
| JOSHUA BOWERS, Individually and for Others Similarly Situated<br><br>v.<br><br>WESTMORELAND SAN JUAN MINING LLC | Case No._____<br><br>Jury Trial Demanded<br><br>FLSA Collective Action<br>Rule 23 Class Action |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.  Joshua Bowers (Bowers) brings this class and collective action to recover unpaid wages and other damages from Westmoreland San Juan Mining LLC (Westmoreland).

2.  Bowers worked for Westmoreland as an underground coal miner in its San Juan County, New Mexico mine.

3.  Westmoreland paid Bowers and the other Hourly Employees (defined below) by the hour.

4.  Like the other Hourly Employees, Bowers regularly worked more than 40 hours a workweek.

5.  But Westmoreland does not pay Bowers and the other Hourly Employees for all the hours they work.

6.  Instead, Westmoreland requires Bowers and the other Hourly Employees to suit out in protective clothing and safety gear necessary to safely perform their job duties, while on Westmoreland premises "off the clock."

7.  And Westmoreland requires Bowers and the other Hourly Employees to change out of and store their safety gear and protective clothing, and wash-up, while on Westmoreland's premises "off the clock" (¶¶ 6-7, Westmoreland's "off the clock policy").

8. But Westmoreland does not pay Bowers and the other Hourly this "off the clock" time before and after their shifts.

9. Westmoreland's off the clock policy violates the Fair Labor Standards Act (FLSA) and New Mexico Minimum Wage Act (NMMWA) by depriving Bowers and the other Hourly Employees of wages, including overtime wages for all hours, including overtime hours, worked.

10. In addition to failing to pay Bowers and the other Hourly Employees for all hours worked, Westmoreland also fails to pay them overtime at the required premium rate for all overtime hours worked.

11. Specifically, Westmoreland pays Bowers and the other Hourly Employees shift differentials it does not include in their regular rates of pay for overtime purposes. (Westmoreland's "shift differential pay scheme").

12. Westmoreland knows these shift differentials must be, but are not, included in Bowers' and the other Hourly Employees' regular rates of pay for overtime purposes.

13. Westmoreland's shift differential pay scheme violates the FLSA and NMMWA by depriving Bowers and the other Hourly Employees of overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for the hours they work in excess of 40 a workweek.

## JURISDICTION & VENUE

14. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

15. The Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

16. This Court has general personal jurisdiction over Westmoreland because it is registered to do business in New Mexico, maintains its principal place of business in New Mexico, and conducts

substantial business activities in New Mexico, including employing Westmoreland and other Hourly Employees.

17. Venue is proper because a substantial part of the events or omissions giving rise to the claims occurred in this District.

18. Specifically, Westmoreland employed Bowers and other Hourly Employees pursuant to its off the clock policy and shift differential pay scheme in this District.

## PARTIES

19. Bowers worked for Westmoreland as an underground coal miner in Westmoreland's San Juan Mine from approximately April 2019 through October 2022.

20. Throughout his employment, Westmoreland classified Bowers as non-exempt and paid him by the hour.

21. Throughout his employment, Westmoreland subjected Bowers to its off the clock policy and shift differential pay scheme.

22. And throughout his employment, Westmoreland employed Bowers pursuant to its shift differential pay scheme.

23. Bowers brings this class and collective action on behalf of himself and other similarly situated Westmoreland employees who were subject to Westmoreland's off the clock policy and/or shift differential pay scheme.

24. The putative FLSA collective of similarly situated employees is defined as:

> **All hourly Westmoreland employees who have worked during the last three years through final resolution of this action. (the "FLSA Collective Members").**

25. The putative class of similarly situated employees is defined as:

> **All Westmoreland employees who Westmoreland paid by the hour who have worked in New Mexico (the "New Mexico Class Members").**

3

26. The FLSA Collective Members and the New Mexico Class Members are collectively referred to as the "Hourly Employees."

27. The Hourly Employees can be readily ascertained from Westmoreland's business and personnel records.

28. Westmoreland is a Delaware limited liability company headquartered in Waterflow, New Mexico.

29. At all relevant times, Westmoreland transacted and conducted substantial business in New Mexico.

30. Westmoreland may be served through its registered agent: **Corporation Service Company, 732 E. Michigan Dr., Suite 500, Hobbs, New Mexico 88240**.

## FLSA COVERAGE

31. At all relevant times, Westmoreland was an "employer" within the meaning of the FLSA. 29 § 203(d).

32. At all relevant times, Westmoreland was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

33. At all relevant times, Westmoreland was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. §203(s)(1).

34. At all relevant times, Westmoreland had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

35. At all relevant times, Bowers and the other Hourly Employees were Westmoreland's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

4

36. At all relevant times, Bowers and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

37. Westmoreland touts that it "has long been a cornerstone of America's energy generation sector" with its San Juan Mine's "annual production is exclusively devoted to PNM's adjacent, 924-MW San Juan Generating Station."[1]

38. To meet its business objectives, Westmoreland hires employees, like Bowers and the other Hourly Employees.

39. Westmoreland uniformly classifies these employees as non-exempt and pays them by the hour.

40. While exact job duties and locations may differ, Bowers and the other Hourly Employees are all subject to Westmoreland's same or similar policies—its off the clock policy and shift differential pay scheme—for similar work.

41. For example, Bowers worked for Westmoreland as an underground coal miner in its San Juan County mine from approximately April 2019 until October 2022.

42. Westmoreland classified him as non-exempt and paid him by the hour.

43. Specifically, Westmoreland paid Bowers a base hourly rate of approximately $38 per hour.

44. And Bowers typically worked approximately 4 days a week for 12 hours a day (48 hours a workweek).

45. Throughout his employment, Westmoreland required Bowers to record his "on the clock" hours via Westmoreland's designated timekeeping system.

---

[1] https://westmoreland.com/about-westmoreland/ *and* https://westmoreland.com/westmoreland-san-juan-mining-llc/ (last visited March 10, 2025).

46. Bowers' job duties included drilling and blasting, operating the roof bolting machine, as well as other mining machinery, to extract coal.

47. But, throughout his employment, Westmoreland required Bowers to perform compensable work on its premises, before and after his scheduled shift under its off the clock policy.

48. Specifically, Westmoreland required Bowers to put on his protective clothing and safety gear (including steel toed boots, safety glasses, hard hat, head lamp, ear plugs, gloves, self-contained self-rescuer, proximity detector, and tracker), "off the clock," while on Westmoreland's premises.

49. This "off the clock" work took Bowers approximately 30 to 45 minutes each workday.

50. Bowers could not perform his job duties in accordance with Westmoreland's policies, procedures, and expectations without this protective clothing and safety gear.

51. Indeed, much of the safety gear Bowers must utilize is mandated by federal regulation. *See* 29 C.F.R. § 1910.132; 30 C.F.R. § 75, *et seq.*; 30 C.F.R. § 77, *et seq.*

52. The donning of protective clothing and safety gear are therefore integral and indispensable work duties for Bowers.

53. Likewise, Westmoreland required Bowers to remove and store his safety gear and protective clothing and shower each day after his shift, all "off the clock" and without compensation.

54. This took Bowers approximately 30 to 45 minutes each workday.

55. Bowers could not perform his job duties in accordance with Westmoreland's policies, procedures, and expectations without removing and storing this safety gear and protective clothing and washing up each workday.

56. Bowers could not safely perform his job duties in accordance with Westmoreland's policies, procedures, and expectations without removing and storing this safety gear and protective clothing and washing up each workday.

57. The removal and storage of safety gear and protective clothing and showering each day are therefore integral and indispensable work duties for Bowers.

58. But under its off the clock policy, Westmoreland did not compensate Bowers for the same.

59. Thus, under its off the clock policy, Westmoreland failed to pay Bowers wages, including overtime wages for all his hours worked and overtime hours worked during workweeks in which he worked in excess of 40 hours, in violation of the FLSA and NMMWA.

60. Bowers and the other Hourly Employees perform their jobs under Westmoreland's supervision and use materials, equipment, and technology that Westmoreland approves and supplies.

61. Westmoreland requires Bowers and the other Hourly Employees to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

62. At the end of each pay period, Bowers and the other Hourly Employees receive wages from Westmoreland that are determined by common timekeeping methods that Westmoreland selects and controls.

63. But, just as with Bowers, Westmoreland fails to pay the other Hourly Employees for all their hours worked.

64. Indeed, Westmoreland uniformly subjects the other Hourly Employees to the same or similar off the clock policy it imposed on Bowers.

65. Specifically, just as with Bowers, Westmoreland requires them to put on their safety gear (including steel toe boots, safety glasses, hard hat, head lamp, ear protection, gloves, self-contained self-rescuer, proximity detector, and tracker) "off the clock," while on Westmoreland's premises.

66. And Westmoreland requires them to remove and store their safety gear and protective clothing and wash up after their shifts, likewise, "off the clock" and without compensation.

67. And like Bowers, much of the safety gear they must utilize is mandated by federal regulation. *See* 29 C.F.R. § 1910.132; 30 C.F.R. § 75, *et seq.*; 30 C.F.R. § 77, *et seq.*

68. But, like Bowers, the other Hourly Employees are regularly forced to perform this compensable work "off the clock" before and after their scheduled shifts.

69. And, just as with Bowers, Westmoreland does not pay the other Hourly Employees for this work they perform "off the clock" before and after their scheduled shifts, on Westmoreland's premises.

70. And, just as with Bowers, these job duties take the other Hourly Employees approximately an hour to an hour and a half each workday.

71. Westmoreland fails to exercise its duty as Bowers' and the other Hourly Employees' employer to ensure they are not performing work "off the clock" on its premises that Westmoreland does not want performed.

72. And Westmoreland knows, should know, or recklessly disregards whether Bowers and the other Hourly Employees routinely perform work "off the clock," without compensation, before and after their scheduled shifts.

73. Thus, Westmoreland requires, requests, suffers, and/or permits Bowers and the other Hourly Employees to work "off the clock," without compensation, before and after their scheduled shifts.

74. Despite accepting the benefits, Westmoreland does not pay Bowers and the other Hourly Employees for the compensable work they perform "off the clock" before and after their scheduled shifts.

75. Thus, under Westmoreland's off the clock policy, Bowers and the other Hourly Employees are denied wages, including overtime wages, for the compensable work they perform "off

8

the clock" before their scheduled shifts during workweeks in which they work more than 40 hours, in violation of the FLSA and NMMWA.

76. Further, Westmoreland pays Bowers and the other Hourly Employees according to its shift differential pay scheme.

77. Specifically, Westmoreland pays them shift differentials that increase their rates of pay during certain work periods, such as night shifts or weekend shifts, by approximately $2.25 an hour.

78. Westmoreland knows these shift differentials are required to be but are not included in Bowers' and the other Hourly Employees' regular rates of pay for the purpose of calculating overtime.

79. As a result, Westmoreland fails to pay Bowers and the other Hourly Employees overtime at a rate not less than 1.5 times their regular rates of pay—based on all remuneration—for hours worked in excess of 40 a workweek, in violation of the FLSA and NMMWA.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

80. Bowers brings his claims as a class and collective action on behalf of himself and the other Hourly Employees.

81. Like Bowers, the other Hourly Employees are victimized by Westmoreland's off the clock policy and shift differential pay scheme.

82. Other Hourly Employees worked with Bowers and indicated they were paid in the same manner, performed similar work, and were subject to Westmoreland's same off the clock policy and shift differential pay scheme.

83. Based on his experience with Westmoreland, Bowers is aware Westmoreland's off the clock policy and shift differential pay scheme were imposed on other Hourly Employees.

84. The Hourly Employees are similarly situated in the most relevant respects.

85. Even if their job duties and locations might vary somewhat, these differences do not matter for the purpose of determining their entitlement to overtime at the required premium rate.

86. The Hourly Employees are held together by Westmoreland's off the clock policy and shift differential pay scheme, which systematically deprive Bowers and the other Hourly Employees of wages, including required overtime wages, for all hours worked, including those in excess of 40 a workweek.

87. Therefore, the specific job titles or job locations of the Hourly Employees do not prevent class or collective treatment.

88. Westmoreland's failure to pay these employees overtime wages at the required premium rate—based on all remuneration—results from generally applicable, systematic policies, and practices that are not dependent on the personal circumstances of the Hourly Employees.

89. The Hourly Employees are denied overtime wages at the required premium rate—based on all remuneration—for all overtime hours worked when they work more than 40 hours in a workweek.

90. Westmoreland's records show the number of hours the Hourly Employees worked "on the clock" each workweek.

91. Westmoreland's records likewise show how and how much it paid the Hourly Employees.

92. The back wages owed to Bowers and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

93. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Westmoreland's records, and there is no detraction from the common nucleus of liability facts.

94. Therefore, the issue of damages does not preclude class or collective treatment.

95. Bowers' experiences are therefore typical of the experiences of the other Hourly Employees.

96. Bowers has no interest contrary to or in conflict with the other Hourly Employees that would prevent class or collective treatment.

97. Like each Hourly Employee, Bowers has an interest in obtaining the unpaid wages owed under federal and New Mexico law.

98. Bowers and his counsel will fairly and adequately protect the interests of the other Hourly Employees.

99. Bowers retained counsel with significant experience in complex class and collective action litigation.

100. A class and collective action is superior to other available means for fair and efficient adjudication of this lawsuit.

101. Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Westmoreland will reap the unjust benefits of violating federal and New Mexico law.

102. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

103. Indeed, the multiplicity of actions would create hardship for the Hourly Employees, the Court, and Westmoreland.

104. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

105. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual Hourly Employees.

106. Among the common questions of law and fact are:

    a.    Whether Westmoreland's off the clock policy failed to compensate the Hourly Employees for all hours worked.

    b.    Whether Westmoreland's off the clock policy deprived the Hourly Employees of overtime wages, including overtime wages when they worked more than 40 hours in a week;

    c.    Whether Westmoreland's off the clock policy and/or shift differential pay scheme deprived the Hourly Employees of overtime wages at the required rate—based on all remuneration—for all hours worked over 40 in a workweek;

    d.    Whether Westmoreland's failure to pay its Hourly Employees overtime wages as required by the NMMWA under its off the clock policy and/or shift differential pay scheme constituted a continuing course of unlawful conduct.

    e.    Whether Westmoreland's decision not to pay the Hourly Employees overtime wages at the required rates—based on all remuneration—for all overtime hours worked was made in good faith; and

    f.    Whether Westmoreland's violations were willful.

107.    As part of its regular business practices, Westmoreland intentionally, willfully, and repeatedly violated the FLSA with respect to Bowers and the other Hourly Employees.

108.    Westmoreland's off the clock policy deprived Bowers and the other Hourly Employees of the overtime wages at the required premium rate—based on all remuneration—for overtime hours worked, in willful violation of the FLSA.

109. There are many similarly situated Hourly Employees who have been denied overtime wages for all overtime hours worked, in violation of the FLSA, who would benefit from the issuance of court-supervised notice of this lawsuit and the opportunity to join it.

110. The Hourly Employees are known to Westmoreland, are readily identifiable, and can be located through Westmoreland's business and personnel records.

### WESTMORELAND'S VIOLATIONS WERE WILLFUL

111. Westmoreland knew it employed the Hourly Employees.

112. Hela knew it was subject to the FLSA's overtime provisions.

113. Westmoreland knew Bowers and the other Hourly Employees were its non-exempt employees entitled to overtime pay.

114. Westmoreland knew its Hourly Employees were entitled to be paid for each hour worked.

115. Westmoreland knew the FLSA required it to pay non-exempt employees, including Bowers and the other Hourly Employees, overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 in a workweek.

116. Westmoreland knew Bowers and each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because their "on the clock" hours were recorded via its timekeeping system.

117. Westmoreland knew it paid the Hourly Employees according to its off the clock policy.

118. Westmoreland knew it had a duty to ensure the Hourly Employees were not performing work "off the clock" and without pay.

119. Westmoreland knew it required the Hourly Employees to don and doff safety gear and protective clothing and wash-up, "off the clock."

120. Westmoreland controlled the Hourly Employees' work procedures.

121. Westmoreland knew the Hourly Employees' mandatory "off the clock" work was a fundamental requirement of their jobs with Westmoreland.

122. Westmoreland knew the Hourly Employees' mandatory "off the clock" work was an integral and indispensable requirement to their principal job duties with Westmoreland.

123. Westmoreland knew the Hourly Employees routinely performed this daily, required "off the clock" work for Westmoreland's predominant benefit.

124. In other words, Westmoreland knew the Hourly Employees performed compensable work (*e.g.*, donning/doffing their safety gear and protective clothing and washing-up) "off the clock" and without compensation.

125. Westmoreland knew it paid Bowers and the other Hourly Employees shift differentials.

126. Westmoreland knew these shift differentials were not included in Bowers' and the other Hourly Employees' regular rates of pay for the purpose of calculating their overtime rates of pay.

127. And Westmoreland knew the FLSA required it to pay Bowers and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

128. Westmoreland knew Bowers and the other Hourly Employees regularly worked in excess of 40 hours a workweek.

129. Thus, Westmoreland knew, should have known, or recklessly disregarded whether it failed to pay Bowers and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all the hours they worked in excess of 40 a workweek.

130. Westmoreland's failure to pay Bowers and the other Hourly Employees overtime at the required rates—based on all remuneration—for all overtime hours worked was neither reasonable, nor was this decision made in good faith.

131. Westmoreland knowingly, willfully, and/or in reckless disregard of the FLSA carried out its unlawful off the clock policy that deprived Bowers and the other Hourly Employees of overtime wages at the required rate of pay—based on all remuneration—for all hours worked after 40 a workweek, in violation of the FLSA.

## COUNT I
### FAILURE TO PAY OVERTIME UNDER THE FLSA
### (FLSA COLLECTIVE)

132. Bowers brings his FLSA claim as a collective action on behalf of himself and the other Hourly Employees pursuant to 29 U.S.C. § 216(b).

133. Westmoreland violated, and is violating, the FLSA by employing non-exempt employees, such as Bowers and the other Hourly Employees, in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for the hours they worked in excess of 40 a workweek.

134. Westmoreland's unlawful conduct harmed Bowers and the other Hourly Employees by depriving them of the overtime wages they are owed.

135. Accordingly, Westmoreland owes Bowers and the other Hourly Employees the difference between the wages actually paid and the overtime wages actually earned.

136. Because Westmoreland knew or showed reckless disregard for whether its shift differential pay scheme and off the clock policy violated the FLSA, Westmoreland owes Bowers and the other Hourly Employees these wages for at least the past 3 years.

137. Westmoreland is also liable to Willimas and the other Hourly Employees for an amount equal to all their unpaid overtime wages as liquidated damages.

138. Finally, Bowers and the other Hourly Employees are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COUNT II

### FAILURE TO PAY OVERTIME WAGES UNDER THE NMMWA
### (NEW MEXICO CLASS)

139. Bowers brings his NMMWA claim on behalf of himself and the New Mexico Class Members pursuant to FED. R. CIV. P. 23.

140. The conduct alleged in this Complaint violates the NMMWA. N.M.S.A. §§ 50-4-20, *et seq*.

141. At all relevant times, Westmoreland has been an "employer" within the meaning of the NMMWA. *See* N.M.S.A. § 50-4-1; *see also* N.M.S.A. § 50-4-21.

142. At all relevant times, Westmoreland has been an "enterprise in business" within the meaning of the NMMWA.

143. At all relevant times, Bowers and each New Mexico Class Member have been covered "employees" within the meaning of the NMMWA. *See* N.M.S.A. § 50-4-21(C).

144. At all relevant times, Westmoreland has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof.

145. The NMMWA requires employers, like Westmoreland, to pay employees, including Bowers and the other New Mexico Class Members, overtime wages at rates not less than 1.5 times employees' regular rates of pay—based on all remuneration—for all hours worked in excess of 40 hours in any one 7-day workweek. *See* N.M.S.A. § 50-4-22(D).

16

146. Bowers and the Hourly Employees are entitled to overtime wages under the NMMWA for all hours worked in excess of 40 hours in a 7-day workweek.

147. Westmoreland violated, and is violating, the NMMWA by employing non-exempt employees (Bowers and the other New Mexico Class Members) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a 7-day workweek, including those worked "off the clock" before and after their shifts. *See* N.M.S.A. § 50-4-22(D).

148. Westmoreland's improper practices at issue were, and are, part of a continuing course of conduct, entitling Bowers and the other New Mexico Class Members to recover for all such violations, regardless of the date they occurred.

149. Westmoreland's unlawful conduct harmed Bowers and the New Mexico Class Members by depriving them of the premium overtime wages they are owed.

150. Accordingly, Bowers and the other New Mexico Class Members are entitled to recover their unpaid overtime in an amount equal to 1.5 times their regular rates of pay for all hours worked in excess of 40 in a seven-day workweek; "an additional amount equal to twice the unpaid … wages" as treble damages, N.M.S.A. § 50-4-26(C); and all reasonable attorneys' fees and costs incurred in this action, N.M.S.A. § 50-4-26(E).

## JURY DEMAND

151. Bowers demands a trial by jury.

## RELIEF SOUGHT

Bowers, individually, and on behalf of the other Hourly Employees, seeks the following relief:

a. An Order allowing this action to proceed as a collective action under the FLSA and directing notice be sent to all the FLSA Collective Members allowing them to join this collective action by filing a written notice of consent;

b. An Order designating this lawsuit as a class action and certifying the putative class pursuant to FED. R. CIV. P. 23;

c. An Order designating Bowers and his counsel to represent the interests of the putative class;

d. An Order pursuant to Section 16(b) of the FLSA finding Westmoreland liable for unpaid overtime wages due to Bowers and the FLSA Collective Members, plus liquidated damages in an amount equal to their unpaid wages;

e. An Order finding Westmoreland liable to Bowers and the other Hourly Employees for all unpaid overtime wages owed under the NMMWA, and treble damages in an amount equal to two times their unpaid overtime wages;

f. A Judgment against Westmoreland awarding Bowers and the other Hourly Employees all their unpaid overtime compensation, other damages, and penalties available under the FLSA and NMMWA;

g. An Order awarding attorney's fees, costs, and expenses;

h. Pre- and post-judgment interest at the highest applicable rates; and

i. Such other and further relief as may be necessary and appropriate.

Dated: March 28, 2025

Respectfully submitted,

**JOSEPHSON DUNLAP LLP**

By: */s/ Michael A. Josephson*
Michael A. Josephson
Andrew W. Dunlap
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: 713-352-1100
Fax: 713-352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: 713-877-8788
Fax: 713-877-8065
rburch@brucknerburch.com

**ATTORNEYS FOR BOWERS AND THE HOURLY EMPLOYEES**